UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sierra Wilson,

                Plaintiff,              Case No.

v.                                    Hon.
                                    United States District Judge

Lincoln Park Housing Commission, a Public Agency, the Fourmidable Group, a Michigan Corporation, and Michelle Horgan, an individual, jointly and severally,    Magistrate Judge

                Defendants.

_____

Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

_____

## **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, REQUEST FOR JURY DEMAND**

Plaintiff Sierra Wilson is an individual with a disability whose sole means of support is $840 in monthly disability income through the Social

1

Security Administration. In October of 2015, after spending one year on the wait list for a unit covered by the Federal Section 8 program and managed by the Fourmidable Group for the Lincoln Park Housing Commission, only a home inspection imposed by the Fourmidable Group stood between Wilson and a subsidized apartment that would save her over $350 in rent each month. Social Worker Michelle Horgan came out on behalf of Fourmidable and LPHC to conduct the home inspection, which was going just fine until Horgan spotted Wilson's prescription medication bottles. Horgan's tone changed in the moment she spotted Wilson's medications from complimentary of Wilson's housekeeping to that of an inquisition focused on Wilson's disability, the nature of her medication, and how she manages her health care. A few days later, Wilson learned on the phone that she had failed the home inspection for unspecified reasons. A report produced for the first time over a year later plainly states that Wilson's disability—a mental health condition— was the reason Fourmidable, on behalf of the LPHC, rejected this otherwise fully qualified and eligible individual's application for Section 8 housing.

NOW COMES the Plaintiff, Sierra Wilson, by and through her attorneys, PITT, MCGEHEE, PALMER & RIVERS, and in support of this Complaint against Defendant and in support thereof states as follows:

## I.  THE PARTIES

1.     Plaintiff Sierra Wilson ("Wilson"), at all times material to this lawsuit, was a resident of the State of Michigan.

2.     Defendant Lincoln Park Housing Commission ("LPHC") was at all times material to this lawsuit a public housing agency organized under the laws of the State of Michigan and a recipient of United States Department of Housing and Urban Development ("HUD") program funding.

3.     Defendant the Fourmidable Group ("Fourmidable") is a Michigan Corporation.

4.     Defendant Michelle Horgan ("Horgan") is a social worker licensed in Michigan who works on behalf of Defendants LPHC and Fourmidable.

## II.  JURISDICTION AND VENUE

5.     The instant action arises under the Fair Housing Act of 1968 as amended, 42 U.S.C. §§ 3601 *et seq*. ("FHA"); therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

6.     Plaintiff also brings claims arising from the same core operative facts under the Michigan Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1101 *et seq*., and the Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq*.; therefore, jurisdiction is proper on these state-law claims pursuant to 28 U.S.C. § 1367.

7.     The events alleged herein all transpired in the Eastern District of Michigan; therefore, venue is proper pursuant to 28 U.S.C. § 1391.

### III.  COMMON ALLEGATIONS

8.     Sierra Wilson ("Wilson") is an African-American woman, born in 1986, who currently resides in Baldwin, County of Lake, Michigan.

9.     During the time period relevant to the events alleged herein, Wilson was single and lived alone in Detroit, County of Wayne, Michigan.

10.     Wilson has been found to be disabled by the Social Security Administration and receives monthly disability benefits. In 2015, her monthly benefit amount was $766, and in 2016 her monthly benefit amount was $838.

11.     Wilson suffers from a mental condition that substantially limits one or more life activities.

12.     During the time period relevant to the events alleged herein, Fourmidable was a for-profit Michigan Corporation serving as the exclusive agent to lease, operate, manage, coordinate, supervise, and maintain the Public Housing Program of the LPHC, pursuant to a Management Agreement entered into on June 1, 2013. (Attached as Exhibit 1.)

13.     On or about September 26, 2014, Wilson submitted an Application for Residency ("Application") to Fourmidable for a one-bedroom unit in the "scattered sites" community of the LPHC. (Attached as Exhibit 2.)

4

14.    In her Application, Wilson indicated that she was disabled but required no modification to the apartment.

15.    Shortly after submitting the completed Application, Wilson was deemed eligible for subsidized housing through the LPHC and placed on the wait list for an apartment.

16.    At the time of her Application, Wilson's rent was 80% of her income – $585 per month.

17.    Under the federally subsidized housing program administered through LPHC, the rent Wilson was to pay on an LPHC unit would have been approximately $240 per month.

18.    On or about October 7, 2015, Keisha Brown ("Brown"), who is believed to be a Fourmidable employee who works on behalf of LPHC, called Wilson to notify her that she had risen to the top of the waitlist and an apartment was available.

19.    During this same phone call, Brown informed Wilson that she needed to bring in updated financial paperwork for proof of income.

20.    Wilson brought in the required paperwork that same day or the next day.

21.    On or about October 7, 2015 when Wilson brought her paperwork into the LPHC office, Brown informed her that she was approved for the

housing and gave her a breakdown on the monthly costs.

22.   At this visit to the LPHC office, the LPHC manager told Wilson about her future neighbors at the LPHC apartment that would be hers and told her to start packing up her apartment, as she would be able to move in on October 15, 2015, when she brought the security-deposit funds and the fee for keys to the unit.

23.   After this visit on or about October 7, 2015, to drop off the final paperwork at the LPHC office, Wilson felt elated, as she understood that she would be moving into a subsidized LPHC apartment.

24.   On or about October 9, 2015, Horgan contacted Wilson and informed her that she needed to conduct a home inspection of Wilson's current apartment.

25.   Wilson informed Horgan that she was available the next day, October 10, 2015, and they arranged for Horgan to come to Wilson's current apartment at 12870 West Outer Drive, Detroit, Michigan at 2 pm.

26.   Horgan is a white woman.

27.   On October 10, 2015, Horgan was late to arrive to Wilson's apartment, and told Wilson that she had gotten lost on the way there.

28.   While on the way to Wilson's apartment, Horgan told Wilson on the phone that she "had not had many—if any—home visits in Detroit," which

6

is why Horgan was lost and feeling uncomfortable.

29.    Horgan arrived at Wilson's apartment at 3 pm that afternoon.

30.    Horgan asked Wilson whether she lived alone, and Wilson replied that she did.

31.    Horgan walked through the apartment quickly without stopping to make close inspections, although during this walk-through she stated to Wilson that she thought the apartment was "nice" and complimented her interior décor.

32.    After the walk-through, Horgan and Wilson sat down at a table and Horgan asked her about her income and personal expenses.

33.    Horgan asked Wilson how she could afford such nice furniture on her social security disability check, and Wilson explained that her furniture was from thrift shops and from family hand-me-downs.

34.    Horgan discussed with Wilson the size of the LPHC apartment she would be assigned, and where some of Wilson's furniture would best fit in that LPHC unit.

35.    Horgan then looked around the living room, stood up and walked across the room, and picked up a prescription pill bottle off a table.

36.    Horgan frowned as she looked at the medication label, then walked back across the room with the pill bottle still in her hand, and said

7

"here," as she held them out to Wilson.

37.    Wilson, feeling embarrassed, ridiculed, uncomfortable and anxious from this sudden attention to her medications, responded that she'd already taken her pills for the day.

38.    After this exchange, Horgan had Wilson sign a consent form stating that the home inspection had been conducted and informed Wilson that she had another appointment but would be in touch.

39.    On or about October 13, 2015, Wilson, having not heard back from LPHC or Horgan, called the LPHC office and spoke Brown. The manager informed her on the phone that she had failed the home inspection and been rejected for the apartment.

40.    During this call, Brown would not provide a reason why and indicated that she would be able to tell Wilson more once she received Horgan's email.

41.    On or about October 15, 2015, Wilson, having not heard back from LPHC or Horgan, called the LPHC office again to ask why she had not passed the home inspection.

42.    The manager, Brown, indicated that Wilson would need to submit a request in writing to receive this information.

43.    On or about October 17, 2015, Wilson sent a request in writing for

the reason why she had failed the home inspection.

44.    Two weeks after Wilson sent this written request, she left voicemail messages for Horgan and for the LPHC office manager.

45.    Wilson never received any communication from LPHC, Fourmidable, or Horgan after the October 15, 2015 phone call.

46.    On August 2, 2016, Wilson filed a complaint with HUD, alleging violation of the FHA on the grounds that she was unlawfully discriminated against and denied housing.

47.    On August 10, 2016, in response to the HUD investigation, Fourmidable provided the HUD investigator with a letter and accompanying materials. These materials included Wilson's Application, a Rejection Letter dated October 10, 2015 that was purportedly sent to Wilson, and a letter dated October 8, 2015 to Wilson informing her that she had been accepted to LPHC, "pending any additional background checks." (Attached as Exhibit 3.)

48.    The letter dated October 10, 2015 indicated that the reason for the denial of Wilson's LPHC residency was the "home visit," but under the list of specific reasons for the denial, "other" was the only box checked.

49.    No further information regarding the decision to deny Wilson the LPHC apartment was provided in this letter dated October 10, 2015.

50.    One of the check-box options available on this October 10, 2015

denial letter was for "housekeeping" and "hygiene" that would create an unsafe environment, but this box was not checked.

51.    In its August 10, 2016 response to the HUD inspector, Fourmidable provided no further detail, other than the checked "home visit" and "other" boxes on the October 10, 2015 letter, regarding its decision to deny Wilson an apartment.

52.    On November 9, 2016, Tracy Mathieu, Fourmidable's Director of Compliance, sent the HUD investigator an email indicating that attached was "a copy of our response to the complaint that was mailed in on August 10, 2016." (Attached as Exhibit 4.)

53.    This packet sent on November 9, 2016, included the letter dated October 10, 2016 purportedly sent to Wilson informing her of the reason for her denial, a "Home Visit Assessment" form dated October 10, 2015 and signed by Horgan on October 12, 2015, a "Release of Information Authorization" dated October 10, 2015 and signed by both Wilson and Horgan, and an undated document entitled "Applicant Sierra Wilson, LPHC" signed by Horgan. (Attached as Exhibit 5.)

54.    According to the "Home Visit Assessment" form dated October 10, 2015, but not turned over to the HUD investigator on August 10, 2016, Horgan rated Wilson as "poor" for general housekeeping, furnishings, and safety.

Horgan rated Wilson's home as "good" for pests, grooming, manner of dress, memory, and general activities of daily life. She rated Wilson as "fair" for mood/affect. The narrative portion of the document only says, "Applicant is denied for residency."

55.    The undated narrative document was signed by Horgan and also not turned over to the HUD investigator on August 10, 2016.

56.    The undated narrative document signed by Horgan describes a conversation between Horgan and Wilson regarding her medications and the illness for which she takes them.

57.    The undated narrative further states that Horgan evaluated Wilson's affect, her behavior, and her treatment for her illness: "Ms. Wilson present[ed] with pressured speech. Her thought process was disorganized. She became distracted easily and jumped around from subject to subject. When questioned about treatment for her condition, Ms. Wilson told this worker she . . . currently sees a therapist once a month and a psychiatrist when she needs medication refills at [mental health facility name]."

58.    Among the reasons provided by this undated narrative signed by Horgan was that Wilson "does not have a plan in place if she relocates to get the care she needs to manage her [disability] . . . . "

59.    The LPHC is required to maintain an Admissions and Continued

Occupancy Plan ("ACOP") by federal regulation 24 C.F.R. § 960.202(a)(1).

60.    According to the LPCH ACOP, LPHC may evaluate the suitability of tenants for occupancy through consideration of "objective and reasonable aspects of the family's background." (ACOP § 8.3, attached as Exhibit 6.)

61.    The LPHC ACOP further states that evaluation of a prospective tenant requires verification of certain information, which "may include but may not be limited to" a credit check, a rental history check, a criminal background check, a check of the sexual offender registry, and a home visit. (Exhibit 6 at § 8.3.C.)

62.    The ACOP specifies that "[t]he home visit provides the opportunity for the family to demonstrate their ability to maintain their home in a safe and sanitary manner. This inspection considers cleanliness and care of rooms, appliances, and appurtenances. The inspection may also consider evidence of criminal activity." (Exhibit 6 at § 8.3.C.4.)

63.    Despite maintaining a federally mandated ACOP and receiving federal funding for the operation of the Lincoln Park public housing stock, Defendants acted in reckless disregard or indifference for the federal and state laws that they knew prohibited them from refusing to rent an apartment to Wilson because of her disability.

64.    Despite maintaining a federally mandated ACOP and receiving

federal funding for the operation of the Lincoln Park public housing stock, Defendants acted in reckless disregard or indifference for the federal and state laws they knew prohibited them from refusing to rent an apartment to Wilson because of her race.

65.    Beginning in the late spring or early summer of 2016, Plaintiff became desperate to find housing at an affordable cost.

66.    Plaintiff applied far and wide for subsidized housing until she finally secured a Section 8 unit in Baldwin, Michigan, which is three hours away from her family and friends.

## Count I: Denial of Housing to a Person with a Handicap in Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)

67.    Plaintiff incorporates the above allegations by reference here.

68.    Defendant LPHC rents or causes to rent dwellings as defined by 42 U.S.C. § 3602(e).

69.    Defendant Fourmidable is an agent of LPHC and also rents dwellings as defined by 42 U.S.C. § 3602(e).

70.    Defendant Horgan conducted a home inspection to evaluate Wilson's suitability to rent an apartment from Defendants LPHC and Fourmidable.

71.    Wilson has a handicap as defined by 42 U.S.C. § 3602(h).

72.   Defendant Horgan questioned and made discriminatory statements to Wilson about her handicap, including her medications, her therapeutic treatments, and her ability to manage her condition.

73.   Defendant Horgan recommended to Defendants LPHC and Fourmidable that they deny Wilson a housing unit because of her handicap.

74.   Defendants LPHC and Fourmidable refused to rent an apartment to Wilson because she has a handicap.

75.   As a result of Defendants' unlawful discrimination against Wilson, she has suffered numerous damages, including continued payment of rent in excess of what she would have paid if Defendants had not refused to rent her their subsidized apartment unit, non-refundable moving expenses she incurred in anticipation of moving to Defendants' apartment unit, severe emotional distress, pain and humiliation from the discriminatory treatment she received, long-term costs, inconveniences and emotional distress from being forced to find a subsidized housing unit many hours away from her family and friends.

## Count II: Denial of Housing to a Person on the Basis of Race, in Violation of the Fair Housing Act, 42 U.S.C. § 3604(a)

76.   Plaintiff incorporates the above allegations by reference here.

77.   Defendant LPHC rents or causes to rent dwellings as defined by

14

42 U.S.C. § 3602(e).

78.   Defendant Fourmidable is an agent of LPHC and also rents dwellings as defined by 42 U.S.C. § 3602(e).

79.   Defendant Horgan conducted a home inspection to evaluate Wilson's suitability to rent an apartment from Defendants LPHC and Fourmidable.

80.   Defendant Horgan is white and stated to Wilson that she had rarely, if ever, done a home inspection in Detroit.

81.   Defendant Horgan made discriminatory statements to Wilson that she uncomfortable and afraid to be Wilson's neighborhood in Detroit because it is predominantly African American.

82.   According to the 2010 United States Census, less than 6% of the Lincoln Park population is African American, and over 84% of Lincoln Park population is white.

83.   Defendant Horgan recommended to Fourmidable that it deny Wilson a unit within the LPHC on the basis of Wilson's race.

84.   Defendants Fourmidable and LPHC denied Wilson a rental unit because of she is African American.

85.   As a result of Defendants' unlawful discrimination against Wilson, she has suffered numerous damages, including continued payment of rent in

excess of what she would have paid if Defendants had not refused to rent her their subsidized apartment unit, non-refundable moving expenses she incurred in anticipation of moving to Defendants' apartment unit, severe emotional distress, pain and humiliation from the discriminatory treatment she received, long-term costs, inconveniences and emotional distress from being forced to find a subsidized housing unit many hours away from her family and friends.

### Count III: Denial of Housing to a Person with a Disability in Violation of the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1502

86.    Plaintiff incorporates the above allegations by reference here.

87.    Defendant LPHC is a "real estate broker or salesman" within the meaning of M.C.L. § 37.1501(c).

88.    Defendant Fourmidable is an agent of LPHC and also is a "real estate broker or salesman within the meaning of M.C.L. §37.1501(c).

89.    Defendant Horgan conducted a home inspection to evaluate Wilson's suitability to rent an apartment from Defendants LPHC and Fourmidable.

90.    Wilson is a person with a disability as defined by M.C.L. §37.1103(d).

91.    Defendant Horgan questioned Wilson about her disability,

including her medications, her therapeutic treatments, and her ability to manage her condition.

92.     Defendant Horgan recommended to Defendants LPHC and Fourmidable that they deny Wilson a housing unit because of her disability.

93.     Defendants LPHC and Fourmidable refused to rent an apartment to Wilson because she is a person with a disability.

94.     As a result of Defendants' unlawful discrimination against Wilson, she has suffered numerous damages, including continued payment of rent in excess of what she would have paid if Defendants had not refused to rent her their subsidized apartment unit, non-refundable moving expenses she incurred in anticipation of moving to Defendants' apartment unit, severe emotional distress, pain and humiliation from the discriminatory treatment she received, long-term costs, inconveniences and emotional distress from being forced to find a subsidized housing unit many hours away from her family and friends.

## Count IV: Denial of Housing to a Person on the Basis of Race, in Violation of The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2502

95.     Plaintiff incorporates the above allegations by reference here.

96.     Defendant LPHC is a "real estate broker or salesman" within the meaning of M.C.L. § 37.2501(c).

97. Defendant Fourmidable is an agent of LPHC and also is a "real estate broker or salesman within the meaning of M.C.L. §37.2501(c).

98. Defendant Horgan conducted a home inspection to evaluate Wilson's suitability to rent an apartment from Defendants LPHC and Fourmidable.

99. Defendant Horgan is white and stated to Wilson that she had rarely, if ever, done a home inspection in Detroit.

100. Defendant Horgan was uncomfortable and afraid to be Wilson's neighborhood in Detroit because it is predominantly African American.

101. According to the 2010 United States Census, less than 6% of the Lincoln Park population is African American, while over 84% of Lincoln Park population is white.

102. Defendant Horgan recommended to Fourmidable that it deny Wilson a unit within the LPHC on the basis of Wilson's race.

103. Defendants Fourmidable and LPHC denied Wilson a rental unit because of she is African American.

104. As a result of Defendants' unlawful discrimination against Wilson, she has suffered numerous damages, including continued payment of rent in excess of what she would have paid if Defendants had not refused to rent her their subsidized apartment unit, non-refundable moving expenses she

18

incurred in anticipation of moving to Defendants' apartment unit, severe emotional distress, pain and humiliation from the discriminatory treatment she received, long-term costs, inconveniences and emotional distress from being forced to find a subsidized housing unit many hours away from her family and friends.

## IV.  Prayer for Relief

Because of Defendants' above-described joint and several violations of Plaintiff's rights under the Fair Housing Act, the Michigan Persons with Disabilities Civil Rights Act, and the Elliott-Larsen Civil Rights Act, Plaintiff seeks the following relief:

    a.  Actual damages;

    b.  Damages related to emotional distress, embarrassment, and humiliation related to the extremely discriminatory treatment Plaintiff has endured;

    c.  Economic damages, including the costs of finding another place to live, the difference between what Plaintiff would have paid to live at Defendants' unit and what she needed to pay for continued housing at her market-rate apartment, the costs of non-refundable moving costs she anticipated in October of 2015, and the loss of furniture she gave or sold at

a loss in anticipation of that move;

d. Plaintiff's lost housing opportunities, in particular the loss of the opportunity to live in Lincoln Park, near her family and friends, compared to the emotional and actual costs of living over three hours away from her family and support system; and

e. Punitive damages for the discriminatory statements made by Defendants, their knowledge of the illegality of their actions under federal and state law, and the egregiousness of their unlawful conduct in light of their being a public housing authority that receives federal and state funding.

Respectfully submitted,

PITT MCGEHEE PALMER & RIVERS, P.C.

/s/Robin B. Wagner
Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

Dated:  June 12, 2017

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Sierra Wilson,

                Plaintiff,            Case No.

v.                                 Hon.
                                 United States District Judge

Lincoln Park Housing Commission, a
Public Agency, the Fourmidable   Magistrate Judge
Group, a Michigan Corporation, and
Michelle Horgan, an individual, jointly
and severally,

                Defendants.

---

Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

---

## **DEMAND FOR JURY BY TRIAL**

Plaintiff, by and through her attorneys, Pitt McGehee Palmer & Rivers,

P.C., hereby demands a trial by jury of all issues in the within cause of action.

**PITT MCGEHEE PALMER & RIVERS**

By:   /s/Robin B. Wagner
Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

Dated:  June 12, 2017